**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOSEPH SYSLING | § | |
| *plaintiff* | § | CA No. _____ |
| v. | § | |
| | § | |
| "FUNPLEX"; "ROLLER CITY USA"; | § | |
| WT DEVELOPMENT, LLC; | § | |
| THE INTERNATIONAL FUNPLEX | § | JURY TRIAL DEMANDED |
| OFFICE SPORTS BAR & GRILL, LLC; | § | |
| HOUSTON FUNPLEX, LLC | § | |
| d/b/a  FUNPLEX OF HOUSTON | § | |
| *defendants* | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

COMES NOW PLAINTIFF JOSEPH SYSLING ("Plaintiff") and files this his Original

Petition complaining of Defendant Funplex, aka Roller City USA, aka WT Development, LLC,

aka The International Funplex Office Sports Bar & Grill, LLC, aka Houston Funplex, LLC, d/b/a

FUNPLEX of Houston, (hereinafter as "Defendant" or "FUNPLEX"), and for cause therefore

would shoe the Court as follows:

### I.  PARTIES

1.     Plaintiff Mr. Joseph Sysling is an individual residing in Harris County, Houston, Texas.

2.     Defendant Funplex has it's principal place of business located at 13700 Beechnut,

       Houston, Texas 77083; Harris County.

3.      This Defendant may be served with process by service upon its known registered

       agent(s) [ multiple agents have been assigned to the various assumed identities of this

       business ] **(i)** Lloyd S. Moody, for The International Funplex Office Sports Bar & Grill,

LLC, located at 9215 Solon Road, Suite D-1, Houston, Texas 77064; and/or

**(ii)** Todd Moody, for Houston Funplex, LLC, similarly located at 9215 Solon Road, Suite

D-1, Houston, Texas 77064.

## II.  JURISDICTION & VENUE

4.      This Court has Jurisdiction over the claim because the Plaintiff has asserted a claim

arising under Federal Law; specifically 42 U.S.C. 2000e *et seq*., and 28 U.S.C. §1343.

Jurisdiction is also proper as a matter of diversity as the amount in controversy exceeds

$75,000.00 USD. Defendant Funplex qualifies as an "employer" under **§**21.002(8)(a).

5.      Venue is proper under this District because the Defendants have significant business

interests in this district, and it is the District of Residency of a Corporation in a state with

multiple districts, pursuant to 28 U.S.C. §§1391 (b)(2) & (d).

## III.   TITLE VII EXHAUSTION OF ADMINISTRATIVE REMEDY

6.      Mr. Sysling's claims for racial discrimination are partially based on Title VII of the Civil

Rights Act of 1964, as catalogued in 42. U.S.C. 2000e et seq..  Exhaustion occurs (i)

when the plaintiff files a timely charge with the EEOC, and (ii) receives a statutory notice

of right to sue.  *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996).

7.      Regarding the first requirement, Mr. Sysling filed his EEOC claim timely,

Charge No. 31C-2020-00377 against Funplex, mailed September 23, 2020. [ **Exhibit B** ]

8.      Regarding the second requirement, Mr. Sysling received a  statutory notice of right to sue

from the EEOC, and he is timely filing suit after having received that notice.

Accordingly, Mr. Sysling has exhausted his administrative remedies under TITLE VII.

## IV.   FACTUAL ALLEGATIONS

9.     On or about March 20th, 2019, Mr. Sysling applied for the position of Administrative

Assistant.  Though he was initially hired as such, his eventual purpose was to the fill the

position of Assistant General Manager for the foreseeable future.  This would entail

guiding and suggesting improvements to protocols, procedures, and safety aspects of the

attractions within the premises.  Communications between the parties shall reflect the

same in the discovery process.  Mr. Sysling had previously been employed by The Walt

Disney Company [commonly known as "Disney"] for five (5) years prior to his

employment with the Defendant.  His experience, knowledge of the industry, and time

spent within the Disney archetype, gave him unique and unmatched qualifications which

he brought to Funplex in order to improve their business.

10.    While Mr. Sysling was employed by Funplex, he experienced the following hazardous

conditions / hostile work environments including - but not limited to - untrained safety

conditions and threats of physical violence from guests & patrons of the establishment.

On information and personal knowledge, many of these safety threats went unanswered

and unmitigated, as the number of security staff were actually decreased over time.

11.    Sometime in late March / early April, 2019, Mr. Sysling was moved to the position of

Assistant General Manager, and began to move forward in this position, contributing to

the Defendant's business to the best of his abilities.  Despite bringing his own skills and

abilities to his position, Mr. Sysling required training for his position's particular duties &

responsibilities – which was never formally provided to him, regardless of his multiple

requests for same.

12.     On or about May 4th, 2019, Mr. Sysling was terminated from his employment by Funplex
– ostensibly for "being white".  Despite an excellent record of performance and behavior,
as well as attendance and adherence to policy, Mr. Sysling was terminated from his
employment for being the wrong race. [ **Exhibit A** ]

## V.   LEGAL ARGUMENTS

13.     Pursuant to Title VII of the Civil Rights Act of 1964, under 42 U.S.C. 2000e-2: "It shall
be unlawful for an employer— (1) to fail or refuse to hire, or to discharge, any individual
or otherwise discriminate against any individual with respect to his compensation, terms,
conditions, or privileges of employment, **because of** such individual's race, color,
religion, sex, or national origin, ; (2) to limit, segregate, or classify his employees in any
way which would deprive or tend to deprive any individual of employment opportunities
or otherwise adversely affect his status as an employee, because of such individual's
race..."

14.     Chapter 21 of the Texas Labor Code indicates that "[a]n employer commits an unlawful
employment practice if **because of** race, color, disability, religion, sex, national origin, or
age the employer: (1)  fails or refuses to hire an individual, discharges an individual, or
discriminates in any other manner against an individual in connection with compensation
or the terms, conditions, or privileges of employment;  or (2)  limits, segregates, or
classifies an employee or applicant for employment in a manner that would deprive or
tend to deprive an individual of any employment opportunity or adversely affect in any
other manner the status of an employee."     Sec. 21.051

15.     A claim of intentional discrimination may be proved by either direct or circumstantial
        evidence. *Wallace v. Methodist Hosp. Sys*. 271 F.3d 212, 219 (5th Cir. 2001).  In cases of
        Circumstantial evidence, courts usually follow the burden shifting analysis articulated in
        *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973) for indirect discrimination
        claims. See *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Wheeler v.
        BL Dev. Corp*., 415 F.3d 399, 405 (5th Cir. 2005).

16.     **Direct evidence** is evidence of conduct or statements that reveal a discriminatory motive
        for the adverse employment action, i.e., proves the fact of discriminatory animus without
        inference or presumption.  In other words, direct evidence "reflects directly the alleged
        discriminatory attitude" and "bear[s] directly on the contested employment decision."
        *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quoting *Taylor v. Va.
        Union Univ.*, 193 F.3d 219, 232 (4th Cir.1999) (en banc) (citation and internal quotation
        marks omitted)).  Direct evidence "typically consists of clearly sexist, racist, or similarly
        discriminatory statements or actions by the employer.*" Coghlan v. Am. Seafoods Co.
        LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005).

17.     [D]irect evidence is evidence "showing a specific link between the alleged discriminatory
        animus and the challenged decision, sufficient to support a finding by a reasonable fact
        finder that an illegitimate criterion actually motivated" the adverse employment action.
        Thus, "direct" refers to the causal strength of the proof, not whether it is 'circumstantial'
        evidence.

18.    A plaintiff with strong (direct) evidence that illegal discrimination motivated the

employer's adverse action does **not** need the three-part *McDonnell Douglas* burden

shifting analysis to get to the jury, regardless of whether his strong evidence is

circumstantial.  *Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir. 2004).

19.    In the absence of direct evidence of discrimination, Section 1981 and Title VII causes of

action, including Americans with Disabilities Act cases, are governed by the burden-

shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04

(1973). *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Shackelford v.*

*Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (noting that Section 1981

claims and Title VII claims use the same burdens of proof and analysis).

20.    First, the plaintiff must establish a *prima facie* case of discrimination, "which requires a

showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the

position at issue; (3) was discharged or suffered some adverse employment action by the

employer; and (4) was replaced by someone outside his protected group or was treated

less favorably than other similarly situated employees outside the protected group."

*McCoy*, 492 F.3d at 556; *Caldwell v. Univ. of Houston Sys.*, 520 Fed. Appx. 289, 293

(5th Cir. 2013); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

21.    If the plaintiff makes a *prima facie* showing, the employer must then provide a

**legitimate, non-discriminatory reason** for the employment action. *Byers*, 209 F.3d at

425. "The burden on the employer at this stage is one of production, not persuasion; it can

involve no credibility assessment." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir.

2007) (quotations and citations omitted).

22.   Funplex has already provided its reason in **Exhibit A**.  A claim of intentional

discrimination may be proved by either direct or circumstantial  evidence.

See *Wallace* v. *Methodist Hosp. Sys*. 271 F.3d 212, 219 (5th Cir. 2001).  In cases of

*circumstantial* evidence, courts usually follow the burden shifting analysis articulated in

*McDonnell Douglas Corp*. v *Green*, 411 U.S. 792, 802 (1973)(emphasis added), for

indirect discrimination claims. See *McCoy* v. *City of Shreveport*, 492 F.3d 551, 556 (5th

Cir. 2007); *Wheeler* v. *BL Dev. Corp*., 415 F.3d 399, 405 (5th Cir. 2005).

      **A.**      **RACIAL DISCRIMINATION under TITLE VII of the
Civil Rights Act of 1964**, **42 U.S.C. § 2000e**, *et seq*

23.   Plaintiff hereby adopts all factual allegations above *in haec verba*.

24.   A claim of intentional discrimination may be proved by either direct  or circumstantial

evidence. See *Wallace v. Methodist Hosp. Sys*. 271 F.3d 212, 219 (5th Cir. 2001).  In cases

of circumstantial evidence, courts usually follow the burden shifting analysis articulated

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), for indirect

discrimination claims. See *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir.

2007); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005).

25.   To establish a *prima facie* case of discrimination, a plaintiff must establish he: (1) is a

member of a protected class; (2) was qualified for the position at issue; (3) was subjected

to an adverse employment action; and (4) was replaced by someone outside the protected

class, or other similarly situated persons were treated more favorably.  *McCoy*, 492 F.3d

at 556; *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir.

2001).

26.     The fact that the Plaintiff is Caucasian does not excuse, mitigate, or justify his racial targeting.  Mr. Sysling (1) is a member of a protected class (Caucasian); (2) was unquestionably qualified for the position at issue after his employment at Disney; (3) was subjected to an adverse employment action in the form of a hostile work environment and his ultimate termination; and (4) other similarly situated persons were treated more favorably.

27.      Occasionally, an employer may make comments that reveal an illegal motive. Such comments are "direct evidence" if they were made by a person with authority over the employment decision, proximate in time to the action, and concern the decision.  *Brown v. CSC Logic, Inc*., 82 F.3d 651 (5th Cir. 1996). The Defendant has supplied **direct evidence** of their motive and intent, and it has been made available in the Complainant's initial filing as **Exhibit B**, as issued by Ms. Bojana Vasiljevic, the Human Resources Director for Funplex.


**B.      RACIAL DISCRIMINATION under CHAPTER 21 OF THE TEXAS LABOR CODE –  the Texas Commission on Human Rights Act §21.002 *et seq* of the Texas Labor Code (the "Act")**

28.     Plaintiff hereby adopts all factual allegations above *in haec verba*.

29.     Under §21.051 of the Texas Commission on Human Rights Act (codified within §21.000 *et seq* of the Texas Labor Code): An employer commits an unlawful employment practice if *because of ...race*, religion, or gender... the employer: (1)... discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment;  or (2)  limits, segregates, or

classifies an employee ... in a manner that would deprive or tend to deprive an individual

of any employment opportunity or adversely affect in any other manner the status of an

employee. *Id*.

30. Pursuant *Ysleta ISDA v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). "To prevail on a

claim of racial discrimination, the plaintiffs had to prove that (1) they were members of a

class protected by the act, (2) they were qualified for their positions, (3) they were

adversely effected, and (4) they were treated less favorably than similarly situated

members of the opposing class. *Id*.

31. Mr. Sysling is prepared to prove up a *prima facie* case of discrimination due to

his race and/or ethnicity pursuant to the above elements and the Texas Labor Code.

He is; (1) a member of a class meant to be protected by the act; (2) qualified for the

position he held after having worked for DISNEY for several years; (3) adversely effected

by his termination; and, (4) and was treated less favorably than other employees of

different races. *Id.*

32. By and through the above arguments, Plaintiff's claims shall survive summary judgment.[1]

---

[1] *See, e.g., Haire v. Board of Sup'rs of La. State Univ. Agricultural & Mech. Coll*., 719 F.3d 356, 365 n. 10 (5th Cir. 2013) (reversing summary judgment for the employer in a discrimination case, and holding that, "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence . . . is likely to support an inference of discrimination *even without further evidence of defendant's true motive*.") (italics in original)

## VI.   DAMAGES

33.     Despite best efforts, Mr. Sysling has been unable to secure employment since the date of

his termination from Funplex. This has caused him serious financial and emotional harm.

34.     **BACK PAY**.  Prevailing claimants under the anti-discrimination laws may recover lost

back-pay and benefits.  *See Miller v. Raytheon Co.*, 716 F.3d 138, 146 (5th Cir. 2013).

The purpose of back pay is to "make whole the injured party by placing that individual in

the position he or she would have been in but for the discrimination." *Sellers v. Delgado

Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988).

35.     **FRONT PAY**.  "Front pay refers to future lost earnings." *Wal-Mart Stores v. Davis*, 979

S.W.2d 30, 45 (Tex. App.–Austin 1998, pet. denied).  Regarding the calculation of front-

pay, the Fifth Circuit has stated that  "[f]ront pay is . . . calculated from the date of

judgment to age 70, or the normal retirement age, and should reflect earnings in

mitigation of damages." *Patterson*, 90 F.3d at 936 n. 8 (citing J. Hardin Marion, Legal

and Equitable Remedies Under the Age Discrimination in Employment Act, 45

MD.L.REV. 298, 330–334 (1986)).  *See also Blum v. Witco Chem. Corp.*, 829 F.2d 367,

374 (3d Cir. 1987) ("In calculating a front pay award, the jury must consider the expected

future damages caused by defendant's wrongful conduct from the date of judgment to

retirement.").

36.     **COMPENSATORY DAMAGES**.  Mr. Sysling has suffered future pecuniary losses,

emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other non-pecuniary losses, for which he seeks recovery in this lawsuit under Section

1981 and Title VII.  *See, e.g.*, *Salinas v. O'Neill*, 286 F.3d 827, 833 (5th Cir. 2002)

(affirming $150,000.00 compensatory damages award under Section 1981 where the

plaintiff did not receive a position because of his race); 42 U.S.C. § 1981A(a)(1)

(providing for compensatory damages for such harms under Title VII).

37.     **PUNITIVE DAMAGES**.  Funplex acted with malice and reckless indifference to Mr.

Sysling's federally protected civil rights, thus justifying awards of punitive damages

under Section 1981 and Title VII.  *See, e.g.*, *Abner v. Kansas City Southern Railroad Co.*,

513 F.3d 154, 164 (5th Cir. 2008) (affirming $125,000.00 punitive damages awards to

each plaintiff under Section 1981, even though each plaintiff was awarded only $1.00 in

actual damages, and strongly suggesting that any punitive damages award up to

$300,000.00 per plaintiff would have been appropriate even in the absence of any actual

damages); *Hampton v. Dillard Dept. Stores*, 18 F. Supp. 2d 1256 (D. Kan. 1998)

(awarding the plaintiff $1,100,000 in punitive damages in a Section 1981 race

discrimination case); 42 U.S.C. § 1981A(a)(1) (providing for punitive damages under

Title VII when the discrimination is shown to be with "malice or reckless indifference").

In *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S. Ct. 2118 (1999) the U.S.

Supreme Court, interpreting Title VII, held that to satisfy the "malice or reckless

indifference" requirement, the plaintiff does not have to prove that the violation was

egregious or outrageous.  *Id*. at 535-36.

38.     Rather, all that is required is proof that the employer knew that is was acting in the face of

a perceived risk that its actions were in violations of the law's prohibition against

discrimination.  *Id*.; *see also Schexnayder v. Bonfiglio*, 167 Fed. Appx. 364, 368 (5th Cir.

2006) ("a jury may award punitive damages pursuant to Title VII merely if the employer knew it *may have been* violating the law.") (italics in original).  Finally, unlike Title VII claims, there is **no cap** on the amount of *compensatory* **or** *punitive damages* a successful plaintiff can recover for claims filed under Section 1981.

39.     **ATTORNEY'S FEES**.  Attorneys fees are recoverable to a prevailing plaintiff under Section 1981 and Title VII.  *See Miller*, 716 F.3d at 149 (affirming an award of attorneys' fees of $488,437.08 to the plaintiff in a single-plaintiff discrimination case that arose in Dallas); *Lewallen v. City of Beaumont,* 394 Fed. Appx. 38, 46 (5th Cir. 2010) (affirming an award of attorneys' fees of $428,421.75 to the plaintiff in a single-plaintiff discrimination failure to promote case); *Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 789 (S.D. Tex. 2007) (awarding prevailing plaintiff in a single-plaintiff discrimination case tried in Houston $336,010.50 in attorneys' fees).

40.     Due to the unlawful discrimination engaged in by Funplex, Mr. Sysling has experienced concrete economic harm in economic damages, as well as emotional distress.

## VII.  JURY DEMAND

41.     Mr. Sysling demands a trial by jury.

## VIII.  PRAYER

42.     Mr. Sysling asks that he be awarded a judgment against Funplex for the following:

        a.      Actual damages including but not limited to pecuniary losses, non-pecuniary losses, Back-Pay, Front Pay, Compensatory Damages, and, Punitive Damages; in the sum of **$300,000.00**; and,

b.      Prejudgment and post-judgment interest;

c.      Attorney's fees and court costs; and,

d.      All other relief to which Plaintiff is entitled.

                        Respectfully Submitted,

                            _/s/  Julian Frachtman_
                        H. Julian Frachtman
                        SDTX: 2695031
                        SBN:    24087536
                        tel: 832.499.0611
                        fax: 713.651.0819
                        Hfrachtmanlaw@gmail.com
                        3100 Richmond, Ste 203
                        Houston, Texas 77098

                        ATTORNEY FOR PLAINTIFF